The times will be as allotted to counsel. The first case today is number 14-2132 United States v. Renato De La Cruz. You're going to remember what I told you. Thanks. Mr. Madsen, good morning. Good morning, your honor. If I could reserve two minutes. You may. Thank you, your honor. Name please, the clerk, Eduardo Masfer, with me, Lily Axelrod, for the defendant appellant, Renato De La Cruz. ICE agents, immigration officers, removal officers, are not police. They're not. They're not general law enforcement agents. They do not have the powers that general law enforcement agents have. They cannot arrest or detain an individual within their own home, even if they have an administrative warrant. Their powers are limited, and it's specifically limited by the statute that authorizes them. The powers in 8 U.S.C. 1357 only allow them to arrest individuals who they see entering the United States or else they need to obtain a warrant. If they don't obtain that warrant and they have probable cause to arrest somebody, they can do so only if there's a likelihood of escape. And that language, the limits that are imposed upon them by 8 U.S.C. 1357, talking about a warrant and a warrant requirement, and preventing them from arresting people within their own home with a warrant, all by its language demonstrate that these requirements are tethered strongly to the Fourth Amendment. They discuss the warrant requirement. They are linked to the Fourth Amendment. And that's what makes their case, their powers and this case, different than almost any other case that this Court has had to evaluate when dealing with police officers who are exceeding their authority, or at least their regulatory authority, when making an arrest. Well, you're not quibbling that there was probable cause, right? I'm not quibbling there was probable cause. So are you focusing on the escape piece of that? Yes, Your Honor, because that is what was required. So the District Court thought that because he was sort of hiding out from folks who were looking for him because he owed the money his prior residence, that that created enough evidence that there was an escape issue there? The Court did not do that. The Government never argued that. The issue about escape was never addressed by the Court. So the Court simply said there was probable cause to arrest him. The detention was lawful. It never took the next step of analyzing the limits on ICE's power. We filed a motion to reconsider because we were concerned that the Court hadn't realized, when we filed our supplemental memo, that we were focusing on that specific issue. The Court, in its response, indicated that because the detention was lawful, since they have probable cause, that there was no issue. The Court even said in the third vote that we conceded that the authorities could arrest him in this manner. We never conceded that. The Joint Appendix on pages 61 through 71 indicate that we were challenging his detention and his arrest at that time. And it's not just the likelihood of escape. They didn't have a warrant. They had every opportunity to obtain a warrant. During the questioning of the officer, the agent acknowledged that he had had Mr. Delacruz and Mr. Nellis for a period of time. Counsel, the only appellate court that I'm aware of that's decided this issue was held that even if there is some force to your argument, that suppression is not an appropriate remedy for an ICE officer's arresting an individual without a warrant. The Sixth Circuit case, if Your Honor is referring to that one, is a radically different case than this one. Well, the facts are different, but that's the whole thing of the case. And the Supreme Court has told us repeatedly that suppression, the exclusionary rule, is an extreme remedy, and that it's not to be applied unless there is a constitutional violation. If there was an arrest here without probable cause, that might constitute such a violation. But the constitutional violation here is that he was arrested inside his home, unlike the Sixth Circuit case where he was public. No, no, but if there are a number of issues. First, if his presence is lawful inside the home, and if there was probable cause, even a citizen can make an arrest. A citizen, paying a visit to the United States does not permit a police officer without a warrant to enter into a home. It doesn't permit him to enter, but if he has entered consensually, it doesn't prohibit him from making an arrest. That is correct. The police here did not enter consensually. Well, that's your contention. But the District Court found, as a matter of fact, that the police's entry was consensual, but the appellant invited them in. The appellant denies that, but that's a factual matter that the District Court resolved. Well, the District Court didn't resolve on that matter. The District Court acknowledged that the ICE agents had lied to him and told him they were police, and that they had asked to come inside. Now, what language they used, the want-versus-need language the government raises, is inconsequential, because the Supreme Court in Johnson v. The United States specifically stated that when the officer goes to the door and says, I want to speak to you, and the person takes a step back and the officer walks in, that's acquiescence to lawful authority. Except the District Court rejected that claim as well. The District Court never addressed that claim. The District Court spent its memorandum focusing on whether or not Miranda was properly given, and when the motion to reconsider was filed pointing out the issues about the arrest, the District Court found that they had probable cause to arrest him and moved on. The District Court never spent any time doing the legal analysis that Your Honors are now doing in this particular case. And the factual findings the Court made are limited, and simply are limited to the fact that the Court acknowledged that the police lied to Mr. Delacruz, lied about who they were and the nature of why they were there, lied to him in order to get him to open the door. And it is clear on the transcripts of the case that that is exactly what happened. On the Droid Appendix, page 120, you told him you had a concern that he had a gun. Yes. And because of that concern, you needed to frisk him. Yes. That wasn't true. That's right. And so he then opens the door and lets you in to frisk him. That's correct. And you do that. Well, I basically just took him into custody, handcuffed him, and then searched him for weapons. So there was no invitation. The officer says, I have a concern that you have a gun. I'm a police officer. First lie. I have a concern that you have a gun. Second lie. And I need to frisk you. Third lie. In response to that, Mr. Delacruz lets him in to get frisked, and he gets immediately arrested. That is the heart of a constitutional violation. That is entry into somebody's home, where the Constitution and the court have repeatedly said is the most sacred ground for a purpose of effectuating of arrest that the officer had no ability to do. He didn't have an administrative warrant. And as they acknowledged, again, it's Droid Appendix, page 117, they have no authority, even if they did have a warrant, to go into the house. That distinguishes this case from cases that Your Honor has looked at in the past. Assuming all of that is true, and I don't want you to in any way think that I believe it is true, but assume that it's true, all right? How does that affect? There was no evidence gathered inside the house. There was no evidence gathered that was introduced. The statements that were introduced against him were all statements that were made in subsequent interrogation. The first statement was made immediately after he was arrested. So if the arrest is unlawful, the statement is the fruit of a poisonous tree. Not unless it's made in the home. Judge, there was no limitation of that. Brown v. Illinois, the 1975 case, talks about an arrest made with or without a warrant, without probable cause, for question and investigation, would be encouraged if they knew that they could simply read Miranda as a way of eliminating their unlawful detention. So that is what they did here. They knew what they were doing was incorrect. They knew they didn't have the warrant to arrest him. They didn't bring any law enforcement agents with them. They decided to lie. And they decided to lie and trick him in order to arrest him. And then, after they've committed the constitutional violation, now they give him Miranda and say, well, that'll be our cure-all. It's not the cure-all. It shouldn't be permitted to be the cure-all. Your Honor, this Court, in Aguilar and the ICE-raped cases, have talked about ICE's controversial tactics. In this particular case, they were prepared. When dealing with somebody who was non-violent, non-drug individual, not a security risk, and not previously deported, he was no enforcement priority for ICE. For this level of individual, they were prepared to lie, or to make cheat, and say whatever they wanted to say in order to arrest him. Because they, since they're not police officers, are not subject to the Fourth Amendment. They're not looking at a criminal case in the future. When ICE does whatever ICE does, however they manage to do it, there's no consequence to their actions in immigration removal proceedings. It's civil. They gain that benefit. But if they're going to come to somebody's home and they're going to play police officer, then they should quit being an ICE agent and they should go sign up to be a police officer when they're trained and have those constitutional limitations. But that's what they did here. Justice Sotomayor, you said that exclusion is the strong medicine. That was Adams. When the police entered with a warrant but they had guns, and whether or not suppression should be warranted for that reason. That's not this case. ICE agents impersonated a police officer, lied to individuals, did not follow their basic rules. When that's the constitutional infirmity that they're doing, then yes, strong medicine is required. And in this case, that would be suppression. Wait a minute. You've lost me. Sorry. The Constitution prohibits police from using ruses or lying to suspects? The Constitution permits the first, but not police. No, no. That's not the case. But the authority, the authority as a routine tactic in interrogation of suspects. But this isn't the case. All right. No, no. But there's nothing unconstitutional about lying. There is. If you're using trickery to coerce somebody to let you into their home, there is. That's not an exception. But there's no finding that that's what happened here. There is. This report made the finding that the police lied to Mr. De La Cruz by saying that they were police. But the immigration officers lied by saying that they were police. And they used that ruse to trick him to let them into his apartment. So if they're using trickery and impersonation of a police officer to show that you have the power of law and need to pat-frisk him or want to pat-frisk him because you, as a police officer, have a safety concern, that is complete trickery to get around the Fourth Amendment to get into your home. The police cannot use that degree of trickery. Otherwise, the Constitution and Fourth Amendment protections are meaningless. Why even warn if you can lie? The police could go to your door and say, we heard there was a report of a gas leak. I need you to let me into your house. I heard that there was danger in here. I need you to let me into your house. I heard there was a dead body in your basement. I need you to let me into your house. The police could constantly lie to people to get around the Fourth Amendment. So is this trickery equated to coercion? It does in this case. Why? Because they asked his wife, in essence, to have Mr. De La Cruz come to the door. When he comes to the door, he doesn't step out. He doesn't leave. They begin a series of questioning of him that they're police officers. They have jackets that say police. They say they're police. They're telling him that they think that there's a question about a gun and that he might have a gun. Mr. De La Cruz is not given too many options. So does that mean that he doesn't have the ability at that point to say, no, you can't come in? I would submit to the court he doesn't. When a police officer is standing at your door looking at you saying, I think you have a gun. I need to pat frisky to make sure you don't have a gun. The only action the person has is slam the door in the police's face. However he said, no, you can't come in. I'll step into the hallway. So he knew not to let the police in. The police asked him to come into the hallway. But they asked him because they knew they could not come in without his authority. They also knew he was standing there in his underwear. The police said he wasn't dressed. He had just woken up. So you're asking somebody, well, your options are to come out here half naked into the hallway or let me into your house. It's not unreasonable for anybody, any regular person in Mr. De La Cruz's situation to feel like he doesn't have an option. Either humiliate yourself by standing out in public in your underwear or let the police come into your residence. For the limited purpose that they were lying to him about. That's not what the Constitution, I would submit to the court, permits. And to think that in today's day and age, when an officer approaches an individual, that the individual has the ability to say, you think I have a gun? No. I'm going to slam the door in your face. I would submit that no individual in today's day and age would ever do that with the police. Police have safety concerns. Police have safety issues. Police have, unfortunately, we've seen police do an awful lot of things for a lot less good reason. And so slamming the door in a police officer's face when he says, I think you're armed and dangerous, is not an option that's available to Mr. De La Cruz. From that point, Judge, I'm probably giving the time to have that go to the issue of the required finding. Mr. De La Cruz. Thank you. Thank you, Your Honor. We'll read your record. Read it by me. Thank you. Mr. Richardson, good morning. Thank you, Your Honor. May it please the Court, my name is Robert Richardson, and I represent the United States for purposes of this appeal. Mr. Richardson, we're going to focus on the arrest. Would you please clear up some of this confusion? I will do my very best, Your Honor. First of all, I think there needs to be a separate analysis, just as the Sixth Circuit did in Abdee. One issue is whether or not the failure to obtain this administrative warrant in and of itself warrants suppression. The Abdee Court clearly found or held, as Your Honor noted, that it did not, the statute, neither the statute nor the regulation provides for suppression of evidence in the event that the statute or regulation is not followed. And I do think it's important to make it clear. What we're talking about here is not the sort of arrest warrant that is contemplated by Patent. It is an administrative warrant. The requirement is there, I believe, to make sure that officers are not out there arresting people for immigration violations that supervisors haven't okayed. It's an administrative warrant that's signed by... So that's one part of the defense counsel's claim, the absence of an administrative warrant and the failure to comply with the regulation. Let's put that to one side. Yes, Your Honor. All right? But the further part of his claim is that the police get into the house, in the defendant's view, by trickery that amounts to coercion. And that that somehow not only invalidates the arrest, but invalidates any statements that are made in subsequent interrogations. Yes, Your Honor. As to the first point, I believe, contrary to what counsel recalls, I believe that Judge Stearns did make a finding that it was voluntary. It's, I believe, footnote four to the first opinion he wrote. And I believe he repeated it in the second one. He did consider it. It is a factual finding. It's subject to clear error. That the invitation, that the police were invited, not the police, that the arresting officer was invited in. Yes, Your Honor. That's what I thought, too. Yes. And just on some of the things that were supposed lies, I don't think the designation on the jackets that these folks were police was a lie. It's a word that people in the general public understand as law enforcement officials, basically. The testimony actually was that in addition to being designated that way, each of them had some sort of identification identifying them as from their particular agencies. He and the other deportation officers as from ICE, Christina Rosen from the Department of Labor as from that agency, Jason Donnelly from Social Security as from that agency. Is the common citizen supposed to understand the difference between the arrest authorities of ICE versus a police officer? Well, Your Honor, frankly, I don't think the arrest authority matters. There actually were, and this I disagree completely with the statement made in the reply brief, that these other agents, the special agents who were there were also civil enforcement officers. They weren't. They were special agents. The record is replete with evidence that they were doing a criminal investigation. They weren't at the door, though. There was some evidence that Tim Costello was at the door. One of the witnesses recalled Tim Costello being at the door. In any event, they were all there together. They were all in the building together, but they weren't at the guy's door, from what I recall. No, they may not have been at the door. I think another thing that's important to note is, again, I believe counsel would argue that, again, this would have required an administrative arrest warrant, but I believe that ICE deportation officers are authorized to make criminal arrests. I don't think they're limited. That's not what they were there that day for. They were there to make an arrest for Mr. De La Cruz being unlawfully president of the United States, but that is not the limit of their authority. I believe if you look further in the statute, they also are authorized under certain circumstances to make criminal arrests. And in any event, there is nothing in the Constitution that precludes these officers from entering, with consent, the apartment in which somebody is staying in order to make an arrest. And I think the district court's findings in that regard are clear, and therefore on that basis as well as the basis that the statute does not... But the petitioner is saying they're clearly erroneous just based upon the factual admissions and evidence in the record. Yes, but they're not, Your Honor, because while I'm thinking of it, this notion that he was standing there in his underwear,  there's evidence that before they left he needed more clothes, but it's December, it was cold and rainy outside, the record shows. There's no evidence in the record that he was standing there in his underwear. And the evidence as to what the supervisory deportation officer asked him to do was that he said if he didn't mind, could he step out into the hallway? So he actually was not trying to gain presence into the apartment at all. He was seeing if the defendant would voluntarily come out into the hallway, and it was the defendant's idea that they instead do this in the apartment. As to the other point, and I believe Judge Selye asked about this, of my brother, but all that they got out of the apartment was the defendant's body. There was no evidence introduced at trial of anything that they got by virtue of the arrest having occurred in the apartment. And I think Harris is clear that unless there's a patent violation, we say there isn't to begin with because it was consensual, but even assuming argument though that there were a patent violation, he made all the statements outside of the home. And Harris is clear that once you are outside the home, and we have a concession that there was probable cause to arrest the defendant, as soon as you are outside the home, there no longer is a patent issue. The defendant is lawfully in the custody of the authorities, and any statement that he makes is not subject to being suppressed by virtue of the arrest having arguably been made unlawfully in the home. So the government's position comes now, bottom line, to all of this controversy about whether or not the ICE officer was in the home by consent and whether or not the arrest in the home was lawful is immaterial since there was no evidence seized within the home that was introduced at the trial and that under New York against Harris, everything that you introduced at trial was protected by that doctrine and preserved as evidence. That's your bottom line fallback position. That's absolutely correct, Your Honor. One, that the statutory violation, if there was one, is not one that requires suppression. But under your theory, even if it required suppression, it would suppress what? It would suppress only material that was within the home. I think that's right, Your Honor. I think that's right. I can go on to address other issues raised by the defendant if the court wishes. The defendant argued, for example, that the means of identification that was charged and proved at trial was not means of identification sufficient to identify a particular individual. I think the record belies that. The statute is clear that a name and a date of birth do constitute means of identification and all the evidence at the trial showed, including the defendant's own admissions, that the name and the date of birth belonged to this true individual, Alberto Peña, who testified at trial. There are some other issues that the defendant raises, but if the court has no questions of me regarding them, I would rest on our brief. Thank you. The means of identification issue is much more greater than that. The government charged him with aggravated identity theft, and the substantive crime was the obtaining of unemployment benefits. You can only obtain unemployment benefits with a Social Security number. The Social Security number he used, the one that he obtained, was not the same one as the true Alberto Peña. So while he might have pretended to be Alberto Peña for a variety of other reasons or a variety of other criminal offenses, including misuse of a Social Security number, he didn't use that to commit this crime. As the unemployment insurance agent testified, both the true Alberto Peña and Mr. de la Cruz, since they were using different Social Security numbers, different valid Social Security numbers, could have applied for and received unemployment benefits. So therefore, his receipt of unemployment benefits in this case, the way they charged it in this case, could not constitute aggravated identity theft because he wasn't pretending to be the true Alberto Peña for the purposes of receiving unemployment benefits. He might have been able to get the Social Security number and do a lot of other things. It strikes me, counsel, that you're making a distinction and I'm not sure the distinction is real. So as I understand the proof in this case, the jury could have found that your client, without any consent or permission, using the name and date of birth of the real Peña, obtained a Social Security number in Peña's name. In the new identity's name. Mr. Peña had his own Social Security number. In Peña's name. Yes. You can call it a new identity. It's in Peña's name. It's in the name that he couldn't have gotten a Social Security number for, had it not been for his use of Peña's means of identification. And he then uses that obtained Social Security number as part of his predicate crime, which is the felony taking unlawfully of public funds. And you're saying that because that wasn't Peña's authentic Social Security number, that's not an identity theft crime? It's not identity theft for the purpose of committing unemployment insurance. It might be identity theft if they had charged him with misuse of a Social Security number and therefore committed aggravated identity theft for that crime. Then I would agree. But the way the government charged it, they didn't choose the misuse of the Social Security number. What they chose was the unemployment insurance benefits. And Your Honor had asked about the findings of fact. It's on page 3 of the District Court's decision. It's paragraph number 5. That paragraph says, Speaking across the threshold, Graham identified himself as a police officer, repeated the false story of looking for a man with a firearm. He stated that for safety reasons, he wanted to conduct a frisk. De La Cruz agreed to submit to a frisk and invited Graham and a second agent, Brian Baca, inside the apartment. Once inside, Graham arrested De La Cruz and conducted the frisk of his person. That's the only finding that the court made. It doesn't apply any of the law that Your Honors have discussed with me to those findings,  The five of us are briefed. Thank you, Your Honor. Thank you.